This is a conversion case. After a nonjury trial before the court, a monetary judgment was rendered for the plaintiffs. The defendants' counterclaim was denied. The defendants, the Barneses, appeal. We affirm.
In viewing the record with the attendant presumptions accorded to the trial court's action, the following is revealed. On May 17, 1979 the Barneses entered into a handwritten real estate sales agreement with Mr. W.H. Barnhart to purchase forty-two *Page 283 
acres of land upon which was situated a home, store building, barn, and possibly other structures. That agreement provided that "Seller will not warrant nothing [sic] but everything will be working," and it was further stated that "Seller needs 60 days to move out. Store will be available at time of closing." The next day the parties signed a typewritten contract which had been prepared by a real estate agent. It listed in an exhibit thereto certain items of personal property which were to remain on the real estate and it stated, "DEBRIS AND ANY PARTS OF CARS, EVERYTHING WILL BE CLEARED FROM PROPERTY WHEN IT IS SOLD." The typed agreement contained a provision that "This sale shall be [consummated] within 60 days."
The closing of the real estate transaction occurred on August 1, 1979. Prior to that date the plaintiffs, W.H. Barnhart and his son Houston Barnhart, had removed from the forty-two acres approximately one hundred and fifty junk cars and other items belonging to them. It was impossible to move the personal property on the day of the land closing. They were still in the process of moving their items, other than those listed in the agreement which were to remain on the farm, when Mr. Barnes on September 28, 1979 changed the lock on the gate and informed Mr. W.H. Barnhart not to remove any more of the property. Various items had been moved by W.H. Barnhart during the entire week prior to September 28.
Mr. Barnes testified that, as to time, neither side pushed the other. He knew that Mr. W.H. Barnhart desired to remove items that were still upon the property and that Mr. Barnhart was engaged in so doing when he stopped him from coming back.
After September 28, nothing else was taken from the farm by the Barnharts. Before instituting the conversion suit, the Barnharts' attorney requested that the Barneses allow the Barnharts to remove the rest of their property from the farm, but that demand was denied by the Barneses. On September 28 items of personalty belonging to the plaintiffs still remained on the property, and, at the time of the trial, some of it was still there but some items were no longer located thereon.
Each of the issues raised by the Barneses on appeal will be separately discussed.
 I.
The defendants contend that the evidence was inadequate to prove a wrongful possession by them of the plaintiffs' property.
 "In order for there to be a conversion it must appear that a wrongful taking, detention or an illegal assumption of ownership or use of another's property has taken place. Ott v. Fox, 362 So.2d 836
(Ala. 1978). Where the original taker acquires possession of the property rightfully and has neither asserted legal title to it nor exercised dominion over it inconsistent with the rights of the owner, ordinarily a demand and refusal to deliver the property are necessary. Shriner v. Meyer, 171 Ala. 112, 55 So. 156 (1911); Russell-Vaughn Ford, Inc. v. Rouse, 281 Ala. 567, 206 So.2d 371 (1968).
. . . .
 "Assuming there was no wrongful taking (the tractor being in Southeastern's possession for repair or return), the conversion could have arisen by the exercise of dominion over the tractor by Southeastern in exclusion or defiance of Tarpley's right to possession. Carolina Casualty Insurance Co. v. Tisdale, 46 Ala. App. 50, 237 So.2d 855; cert. denied, 286 Ala. 741, 237 So.2d 861 (1970). In that event no demand would be necessary.
 "The evidence regarding the confrontation between Tarpley and Southeastern at the time the `350' was returned is revealing. That evidence, particularly Tarpley's testimony that Southeastern `took my cat (tractor),' did not return it or his money and `run me off' at a time when the jury found he had a right to possession, was sufficient for the jury to infer exercise of dominion by Southeastern over the `350' in exclusion or defiance of Tarpley's rights. If, after allowing all *Page 284 
reasonable presumptions and inferences as to its correctness, it is not clear that the verdict is erroneous or unjust, we cannot reverse a case on the grounds of insufficiency of the evidence to support the verdict. Midwestern Welding Co. v. Coosa Tool Die, Inc., 54 Ala. App. 159, 306 So.2d 25 (1975)."
Southeastern Machinery Equipment Co. v. Tarpley,398 So.2d 700 (Ala.Civ.App.), cert. denied, 398 So.2d 703 (Ala. 1981).
Here, the defendants obtained the rightful possession of the personal property of the plaintiffs when the defendants bought and lawfully gained possession of the land upon which that personal property was situated. Prior to suit, a demand was made upon the defendants for the plaintiffs' property and the demand was refused. That constituted supportive proof of a wrongful detention, which occurs when, after demand and refusal and without just cause or legal excuse, one person wilfully withholds it from the rightful owner who was then entitled to its immediate possession.
Additionally, under the reasoning in the Tarpley case, the trial court could have ascertained from the evidence that an illegal assumption of ownership or use of the plaintiffs' property occurred. Some of such indicative evidence was the changing of the lock on the gate, the prohibition against returning and removing any of their personal property and the fact that some of the property which was located there on September 28 was absent at trial time.
Thus, the trial court did not err as to this issue.
 II.
The plaintiff Houston Barnhart testified that he was familiar with the property described in the complaint, that he owned particular items thereof, and that his father owned the remainder. That evidence was adequate proof of ownership, which was not controverted by the evidence at the trial.
 III.
Houston Barnhart further swore that he was familiar with the value of the itemized property, that he knew "what stuff costs." He outlined his business and personal experience in buying and selling certain types of personal property which was of the same kind and character as was the vast majority of the property in controversy. He stated the cost and age of many items. Without objection, he rendered his opinion as to the value of each item. After having failed to object to his giving his opinion as to values before the trial court, the defendants may not now raise this question for the first time before this court. Simmons Machinery Co. v. M M Brokerage, Inc.,409 So.2d 743, 752 (Ala. 1982).
In any event, had there been a timely objection raising the issues, the evidence was sufficient to qualify the witness to give his opinion as to the value of his and of his father's personal property.
The trial court heard the witnesses testify. Therefore, the findings of the trial court are presumed to be correct and we are required to review the evidence in a light most favorable to the prevailing party. On review, this court may not reverse unless the trial court's holding was either palpably wrong, or was without supporting evidence, or was manifestly unjust.Anderson v. Blue Star Ready Mix, Inc., 391 So.2d 127
(Ala.Civ.App. 1980). Here, the evidence was supportive of the conversion count of the plaintiffs' complaint. The trial court's judgment was not palpably wrong. Neither was it unjust.
Consequently, we are required to affirm as to the monetary judgment for the plaintiffs, for we find no error regarding any issue raised thereto.
 IV.
The defendants claimed fraudulent concealment on behalf of Mr. W.H. Barnhart as to a leak in the roof of the house involved in the sale. Mrs. Barnhart testified that, while the roof had leaked one time, it had been repaired by them and did not leak at the time of the sale. Mr. Barnes swore that, while he was an expert in construction, *Page 285 
he did not examine the roof prior to the sale of the house to them. There is no evidence that the Barneses made any inquiry of Mr. W.H. Barnhart about the roof, that the seller knew of any current defect therein, or that he made any misrepresentation in its regard. The trial court could have found from the evidence that there was no warranty as to the roof, that the roof did not leak when the house was sold to the Barneses and that there was no fraudulent concealment involved.Harrell v. Dodson, 398 So.2d 272 (Ala. 1981); Blankenship v.Ogle, [Ms. 1982] 418 So.2d 126 (Ala.Civ.App. 1982).
The ore tenus rule and the previously stated rule of review likewise apply as to the action of the trial court in denying recovery to the defendants under their counterclaim. The evidence supports the holding of the trial court which is neither wrong nor unjust. The decision of the trial court as to the counterclaim is affirmed.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of section 12-18-10
(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.