298 So.2d 601

**In the Matter of Vernon D. SOLLIE, Judge.**

**SC 660.**

Supreme Court of Alabama.

Aug. 8, 1974.

William J. Baxley, Atty. Gen., and William G. McKnight, and William M. Bowen, Jr., Asst. Attys. Gen., for Examiner.

Church & Trussell, Pell City, for respondent.

PER CURIAM.

This case is before this court on a recommendation by the Judicial Commission that Vernon D. Sollie, Judge of the Southern Judicial Division of the Inferior Court System of St. Clair County be removed from office. The case proceeded under a judicial disciplinary system established by Amendment 317 to the Alabama Constitution of 1901. This constitutional amendment was repealed and replaced with different machinery and procedures by the new Judicial Article of the Constitution (Amendment 328 which was submitted to the people on December 18, 1973, and proclaimed ratified on December 27, 1973). The recommendation of the Judicial Commission was filed with this court on December 14, 1973.

Judge Sollie was charged with wilful misconduct in office and conduct prejudicial to the administration of justice pertaining to a series of transactions between Judge Sollie and certain persons charged with traffic violations before his court. It was alleged that in return for dismissing traffic offenses Judge Sollie accepted money from these persons which conduct "* * * constitutes violations, separately and severally, of various Alabama criminal statutes, including acceptance or agreement to accept a bribe, extortion, inciting to a felony or misdemeanor, seeking compensation for the performance of an official duty, oppression in office, or otherwise constitutes wilful misconduct in office by said judge." The specifications charged Judge Sollie with improperly taking $40.00 from Robert Daniel Rothe; $35.00 from Curtis Leon Buck; and $50.00 from Charles Lelton Ogle, in consideration for which the judge would handle or dispose of said traffic charges in a manner beneficial to each of these persons.

A hearing was conducted before Special Masters appointed by this court. The Special Masters found that the facts supported the charges against Judge Sollie in two of the three transactions. As conclusions of law the Special Masters, among other things, held that the Southern Judicial Division, of the Inferior Court System of St. Clair County, Alabama, was a court of record within the meaning of Amendment 317 and that, therefore, Judge Sollie was subject to the jurisdiction of the Judicial Commission; that he was guilty of wilful misconduct and conduct prejudicial to the

administration of justice with regard to the Rothe and Ogle transactions; and that the evidence was insufficient to support a finding of guilt with regard to the Buck transaction.

The Judicial Commission adopted the findings of facts and conclusions of law of the Special Masters. It further determined that good cause existed for the removal of Judge Sollie and recommended to this court that such action be taken.

Under Rule 120 of the Rules of Procedure of the Judicial Commission entitled, "Review of Commission Proceedings," Judge Sollie was accorded thirty days from the filing of the recommendations with the Clerk of the Supreme Court to file a verified petition to modify or reject the recommendations of the Commission which petition shall specify the grounds relied on and be based on the record. Judge Sollie did not file such a petition. Following the expiration of the thirty days provided by said rule for the filing of such a petition, this court set February 20, 1974, as a hearing date pertaining to all preliminary matters. At said hearing Judge Sollie was allowed the right to file a belated brief. He further made it known that he didn't desire further oral argument. The cause was submitted on April 3, 1974, on briefs.

■ The evidence supports the finding of facts and conclusions of law of the Rothe charge. The testimony revealed that Mr. Rothe and Judge Sollie had a conversation relative to the point system promulgated by the Alabama Department of Public Safety; that Rothe informed the judge that by reason of his occupation as a truck driver he felt he was in danger of losing his driver's license and thereby, his livelihood, if he were found guilty of the traffic offense; that Rothe gave said judge a check in the amount of $40.00 which the judge cashed at the A & P store in Pell City the next day; that the consideration for the giving of the check was that the traffic offense (speeding ticket) would be handled by the judge in such a manner as not to appear against the driving record of Rothe in the records of the Department of Public Safety; and that the traffic offense against Rothe was nolle prossed.

The judge admitted the receiving and cashing of the check but contended it was given to him as a campaign contribution after the judicial decision had been made to nolle prosse the speeding ticket and that no mention of the campaign contribution was made until after the case had been dismissed.

The finding of facts and conclusions of law in the Ogle transaction were supported by the evidence. The testimony reflected that Ogle inquired of Judge Sollie in his office in the St. Clair courthouse in Pell City what his fine would be for his speeding ticket. Whereupon, the judge explained the point system to him and told Ogle that there was a way to keep this violation off his record in Montgomery but that it would cost him $50.00 instead of the ordinary fine of $29.00. Ogle testified that following this conversation he contacted Alabama State Troopers who supplied him with a body-worn radio transmitter. Ogle testified he returned to Judge Sollie's office and gave the judge $50.00. The records of Judge Sollie's court reflected that the case against Ogle was dismissed.

Lt. Jerry Shoemaker of the Alabama Department of Public Safety Intelligence Unit corroborated most of Ogle's testimony when he recited what he heard over a walkie-talkie radio from outside the courthouse.

Judge Sollie admitted receiving $50.00 from Ogle but again contended it was a campaign contribution and the payment of the money did not enter into the determination of whether or not Ogle's speeding charge would be nolle prossed.

The finding that the evidence was insufficient to support a finding of guilt with regard to the Buck transaction, makes discussion of that incident unnecessary.

Judge Sollie, while not challenging the findings of fact, makes two arguments: (1) The Judicial Commission did not have jurisdiction of his case since the Inferior Court of St. Clair County is not a court of record; and (2) since the new Judicial Article repealed Amendment 317, the respondent's case must be conducted under the new Judicial Article or else he must be impeached.

Constitutional Amendment 317 established a Judicial Commission and vested the commission with power "to investigate, conduct hearings on the qualifications of judges and make recommendations to the Supreme Court in regard to the retirement, censure, suspension or removal of such judges." The term "judge" is defined as follows: *"As used in this amendment:* 'Judge' means a justice of the supreme court, a judge of the court of appeals, or a judge of any circuit court, probate court, municipal court, or other court of record." (Emphasis added)

The respondent argues, however, that since Section 154 of the Constitution provides that "Chancellors and judges of all courts of record . . . shall be learned in the law," and since the judges of the Inferior Court of St. Clair County are not required to be learned in the law, then such court is not a court of record and thus lie outside the reach of Amendment 317. Although this argument has superficial appeal, it does not withstand analysis in light of the case law of this state, coupled with the rather clear legislative purpose underlying Amendment 317.

Note first that the definition of "judge" in Amendment 317 is prefaced by the phrase "as used in this amendment." There can be little doubt that the drafters of Amendment 317 were aware of Section 154 and it is likely that the above phrase was included in the definition to ensure that an argument such as made by the respondent would not prevail. That the phrase "court of record" may have different meanings in different contexts was recognized even before Amendment 317

was adopted. In a 1912 case, Cooke v. Burke, 177 Ala. 155, 58 So. 984 (1912) this court applied the rationale of an earlier case, State v. Burke, 175 Ala. 561, 57 So. 870 (1911). The Court in *Cooke* stated:

"In that case, looking to the previous constitution of county courts and the place long held by them in the judicial history of the state, * * * *we held that, while those courts* which had been established for the trial of misdemeanors under the presidency of the judges of probate *were courts of record for other purposes, they were not courts of record within the meaning of Section 154* of the Constitution, which requires judges of courts of records, except judges of probate courts, to be learned in the law." (Emphasis supplied)

Moreover, in Bekurs v. Bumber Service, 271 Ala. 110, 122 So.2d 727 (1960) this court reaffirmed its position in stating, "A Court may be considered a court of record for one purpose and not so considered for another. See England v. State, 240 Ala. 76, 197 So. 365."

Furthermore, the phrase *"other* court of record" in juxtaposition with probate courts and municipal courts is more evidence that the meaning "court of record" in Amendment 317 was intended to encompass county and other inferior courts. Clearly, municipal courts are not courts of record under Section 154, but are so considered for purposes of Amendment 317.[1]

Furthermore, unless "other court of record" means county courts, to what courts would it apply? Every other type of court which exists in the state today was specifically named. As the Examiner points out in brief, the phrase was merely used as a shorthand method of bringing the numerous and multi-named courts under the reach of Amendment 317. It is just unreasonable to suppose that the legislature intended to extend jurisdiction over every municipal judge, even for the smallest municipality, yet exclude judges of county courts. This court holds that the

**610**

Inferior Court of St. Clair is a court of record as that term is used in Amendment 317 and thus does fall under the jurisdiction of the Judicial Commission.

■ The only other argument urged by the respondent is that since the new Judicial Article repealed Amendment 317, the respondent's case should be brought under the provisions of the new Judicial Article. Respondent concedes that had the action been final at the time the new article was adopted, this court would have jurisdiction. This court is of the opinion that as far as the old Judicial Commission was concerned, the action of that body was final. When the Judicial Commission's recommendation was filed with this court on December 14, 1973, jurisdiction of the case passed to this court. The task of the old commission had been completed.. Furthermore, there is nothing in the new Judicial Article which divests this court of jurisdiction of a pending case once jurisdiction has attached. Furthermore, the respondent has been afforded all the elements due process demands, and, indeed, since this court in proceeding with this case under the procedure of Amendment 317, respondent had an opportunity to appear before this court and present additional evidence if he desired to do so. Thus there is nothing in the new constitutional judicial article which requires a pending case to be dismissed, nor is there any element of fundamental fairness which has not been afforded the respondent. To require the case to proceed anew would merely be delaying the inevitable.

It is, therefore, adjudged and ordered that Vernon D. Sollie be and hereby is removed from office as a judge of the Inferior Court System of St. Clair County.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, MADDOX, McCALL and FAULKNER, JJ., concur.

1. When the new Judicial Article (Amendment 328 to the Alabama Constitution of 1901) becomes effective as to municipal courts, the

judges thereof will be required to have a license to practice law.