William J. Samford, II, District Judge of Lee County, Alabama, was charged with failure to avoid impropriety and the appearance of impropriety in all his activities in violation of Canon 2 of the Canons of Judicial Ethics.[1] Specifically, he was charged with failure to remit fiduciary funds. He was found guilty and removed from office by the Court of the Judiciary. We affirm.
To fully understand the charge, it is necessary to look at all the events leading up to the complaint, including those events which occurred prior to February 1, 1976, the effective date of the Canons of Judicial Ethics. While practicing as a private attorney, Judge Samford was employed by Sergeant Flakes to handle a wrongful death action for the death of his sister, Jean Flakes Williams. The suit was settled for $7,500, and in November 1974, the draft was sent to Sgt. Flakes, who was stationed in Spain, for his endorsement as administrator of the Williams estate.[2] Upon receipt of the returned draft, Judge Samford placed the funds in a trust account, withdrawing the agreed-upon $1,500 attorney's fee in December.
Judge Samford was elected to the Lee County District Judgeship and took office in January, 1975. After his election he agreed to complete the administration of the estate without further compensation. The Judge later withdrew money from the trust account for purposes unrelated to the Williams estate, including a withdrawal of $5,500, which was used to pay the principal and interest on his personal loan, and $500 to pay rent.
Sgt. Flakes contacted Samford several times while he was still practicing law, concerning the administration of the estate but received no satisfactory response. In November, 1975, Flakes first notified the Alabama Bar Association of his complaints concerning Judge Samford's handling of the matter. The Bar Association notified the Judge of the complaint in April, 1976. After five letters from the Bar Association and the Grievance Committee, the Judge finally responded in January, 1977, giving an explanation for his actions in the Williams case and enclosing a check for $6,000. The check was returned with instructions to settle the matter and disburse the funds within 30 days. It appears that ended the matter as far as the Bar Association was concerned. However, Judge Samford did not carry out the instructions of the Bar. On May 2, the Judicial Inquiry Commission, after hearing from Sgt. Flakes, filed a complaint against Judge Samford with the Court of the Judiciary. During that same month, Judge Samford turned the estate matter over to another attorney.
During the proceedings of the Court of the Judiciary, Judge Samford fully admitted *Page 1128 
to his delay in paying out the funds. His only explanation for such an extensive delay was that he was very busy with his duties as judge and was heavily involved in setting up the state-wide district court system. No explanation was given as to why he used $6,000 of the trust account for his personal gain.
The Court of the Judiciary held:
 "This matter having been submitted to the Court on the record, including stipulations of the parties, and oral testimony of the respondent judge made in open Court, the Court now proceeds to make its findings and order.
 "It is considered and ordered that William J. Samford, II, Judge of the District Court of Lee County, is guilty as charged; that from November, 1974, to January 7, 1977, he did not remit fiduciary funds; that on May 16, 1975, while he was a judge, he removed fiduciary funds from a trust account to his personal account and used same for his own benefit; and that he is removed from office."
From this order, Judge Samford appeals, claiming that although he was charged only with failure to pay over fiduciary funds, he was found guilty of that offense as well as of taking the fiduciary funds for his own personal benefit, an act which occurred prior to the effective date of the Canons of Judicial Ethics. Accordingly, he urges this court to review the facts of the case and to impose a lesser sanction.
From 1971 to 1973 the judicial disciplinary machinery in this state was governed primarily by Amendment 317 to the Alabama Constitution, which created a Judicial Commission with the authority ". . . to investigate, conduct hearings on the qualifications of judges and make recommendations to the Supreme Court in regard to the retirement, censure, suspension or removal of such judges . . ." Under this "recommendation" system,
 "If, after hearing, or after considering the record and report of the masters [appointed by the Supreme Court upon the Commission's request], the Commission finds good cause therefor, it shall recommend to the Supreme Court the censure, suspension, removal or retirement, as the case may be, of the judge.
 "The Supreme Court shall review the record of the proceedings on the law and facts and in its discretion may permit the introduction of additional evidence and shall order censure, suspension, removal or retirement, as it finds just and proper, or wholly reject the recommendation."
Under this "recommendation" system this court has applied the test of whether the evidence supported the finding of facts and conclusions of law of the charge. In re Sollie, 292 Ala. 606,298 So.2d 601 (1974). Other jurisdictions with a similar system have also considered the scope of review. See In re Daniels,340 So.2d 301 (La.Sup.Ct. 1976); In re Kelly, 238 So.2d 565,571 (Fla.Sup.Ct. 1970), cert. den. 401 U.S. 962, 91 S.Ct. 970,28 L.Ed.2d 246, rehearing den. 403 U.S. 940, 91 S.Ct. 2245,29 L.Ed.2d 720 (1971). In analyzing their "recommendation" system, which also calls for review on the facts and the law, the Florida Supreme Court stated:
 "While the power to render the ultimate judgment in these cases is vested in this Court, the findings and recommendations of the Florida Judicial Qualifications Commission are entitled to receive due consideration and are of persuasive force. . . . In view of these constitutional provisions prescribing the composition of the Commission, its findings should be given great weight. However, the ultimate responsibility of making a determination rests with this Court, for Sec. 17A (2), Fla. Const., requires that the Supreme Court, after reviewing the record, `shall order removal, discipline or retirement, as it finds just and proper, or wholly reject the Commission's recommendation.'"
However, in 1973, the citizens of this state adopted Amendment 328 to the Constitution (the "Judicial Article"). Our present judicial disciplinary machinery is now found in the Alabama Constitution, Art. VI, §§ 156 and 157 (1973 Supp.), creating a two-tiered system. In brief, this *Page 1129 
present system provides for a Judicial Inquiry Commission, an investigatory body analogous to a grand jury, and a Court of the Judiciary.[3] The Court of the Judiciary is given
 ". . . authority, after notice and public hearing (1) to remove from office, suspend without pay, or censure a judge, or apply such other sanction as may be prescribed by law, for violation of a canon of judicial ethics, misconduct in office, failure to perform his duties, or (2) to suspend with or without pay, or to retire a judge who is physically or mentally unable to perform his duties.
 "(b) A judge aggrieved by a decision of the court of the judiciary may appeal to the supreme court. The supreme court shall review the record of the proceedings on the law and the facts."
Soon after the adoption of the Judicial Article, this court had occasion to consider an appeal from censure for misconduct in office under the new system. Although the court did not explicitly discuss the appropriate scope of review, they looked to the sufficiency of the evidence and found ". . . no clear and convincing evidence of unlawful behavior of Judge Emmet shown in this case which constitutes misconduct in office . . ." In re Emmet, 293 Ala. 143, 148, 300 So.2d 435 (1974).
A comparison of the old and new systems indicates several significant changes relevant to the scope of review. Under the new Judicial Article the Court of the Judiciary does not make recommendations — it makes orders from which the judge may appeal if he or she so desires. The Supreme Court has no power to hear additional evidence or to "order" a sanction "as it finds just and proper, or wholly reject the recommendation." Rather, under this new system, the Supreme Court only reviews the record "on the law and the facts." It is readily apparent that the intent of the legislature was that the decisions of the Court of the Judiciary be afforded much more weight than under the "recommendation" system.
Therefore, we hold that the orders of the Court of the Judiciary are entitled to a presumption of correctness if the charge is supported by "clear and convincing evidence." Rule 10, Rules of the Court of the Judiciary. Our task is to determine whether the record shows clear and convincing evidence to support the order of the Court of the Judiciary.
The finding of the Court of the Judiciary that Judge Samford is "guilty as charged" is fully supported by clear and convincing evidence. In fact, no other conclusion can be drawn from the evidence since the Judge freely admitted that he was dilatory in distributing the fiduciary funds, both before and after he became a District Judge, and offering as an explanation only his preoccupation with court business.
The language in the order of the Court of the Judiciary referring to acts which occurred prior to February 1, 1975, is mere surplusage and does not indicate that the Court of the Judiciary found the Judge guilty of any violations other than those with which he was charged. See 5B C.J.S. Appeal and Error § 1787. Clear and convincing evidence was presented which supports Judge Samford's removal from office. The Judge repeatedly ignored correspondence concerning this matter. He took no action to settle the complaint until January, 1977, when he sent a $6,000 check to the Bar Association. When the check was returned with instructions to settle the matter within 30 days, he again delayed in distributing the money to the appropriate person. His unethical conduct began as a practicing attorney and continued after he became a District Judge.
A Judge must avoid all impropriety and appearance of impropriety. Public confidence in the judiciary is eroded by irresponsible or improper conduct by a Judge. See Commentary, Canon 2, Canons of Judicial *Page 1130 
Ethics. The fact that Judge Samford has a net worth of approximately $700,000, and could technically replace the trust fund, does not justify the acts of impropriety that he committed.
The order of the Court of the Judiciary is affirmed.
AFFIRMED.
BLOODWORTH, MADDOX, JONES, SHORES, EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., and ALMON, J., recuse themselves.
[1] Canon 2. A judge should avoid impropriety and the appearance of impropriety in all his activities.
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should at all times maintain the decorum and temperance befitting his office and should avoid conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
C. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
[2] Although Sgt. Flakes was appointed administrator of the Williams estate in November, 1974, the records were apparently misfiled so that upon request, Sgt. Flakes was told that there was no record of his appointment as administrator. Judge Samford had also forgotten that Flakes had been appointed.
[3] Charles D. Cole, "Judicial Inquiry Commission: Successor to the Judicial Commission of Alabama," 35 Ala. Law. 289 (1974).