Jerry Boggan, judge of probate of Wilcox County, was found guilty of violating certain of the Alabama Canons of Judicial Ethics and was removed from office by the vote of five members of the Court of the Judiciary. The two other members of the Court found that "[t]here is no question that Judge Boggan is guilty of the charges found by this Court," but felt that removal from office was an excessive penalty.
This matter was before the Court of the Judiciary on a complaint filed by the Judicial Inquiry Commission against Judge Boggan. The complaint charged violations of the Alabama Canons of Judicial Ethics.
Judge Boggan appealed. He presents the following three issues in his principal brief:
 "1. Was the imposition of the sanction against Judge Boggan constitutionally defective and did it violate his rights to due process and to equal protection of the law because the procedure failed to provide any opportunity for Judge Boggan to offer evidence with regard to the severity of the sanction following a finding *Page 552 
of guilt and because the severity of that sanction, i.e., removal from office, was left entirely to the discretion of the Court without any objective standards?
 "2. Should this Court, given the absence of objective standards for imposition of judicial discipline, review the severity of the sanction imposed by the Court of the Judiciary and should it modify its prior decisions limiting its authority to review the sanctions imposed by that Court?
 "3. Are Counts One and Two of the complaint supported by `clear and convincing evidence' sufficient for the removal of Judge Boggan from office?"
Judge Boggan asserts in his reply brief that neither the Judicial Inquiry Commission, which brought the charges against him, nor the Court of the Judiciary, which tried him, is legally constituted in accordance with § 6.17(a) and § 6.18(a), Amendment No. 581 of the Constitution of Alabama of 1901, which amendment was proclaimed ratified June 19, 1996. We address this issue first. Judge Boggan made no objection before or during trial to the composition of either the Judicial Inquiry Commission or the Court of the Judiciary, nor did he raise this issue in his principal brief.
The failure of a defendant in a criminal case to make a proper objection to the composition of a grand jury, before entering upon the trial of the case on its merits, constitutes a waiver of the right to do so. Williams v. State, 342 So.2d 1328,1330 (Ala. 1977). We hold that, likewise, the failure of a judge to make a proper objection to the composition of the Judicial Inquiry Commission before entering upon a trial of the case before the Court of the Judiciary constitutes a waiver of the right to do so. The Court takes judicial knowledge of the courts of this State and the judges thereof. Jefferson County v. Busby, 226 Ala. 293,296, 148 So. 411 (1922). Therefore, we take judicial knowledge of the composition of the Court of the Judiciary and of the authority appointing each of the judges on that court. That court, as it was composed when it tried Judge Boggan's case, consisted of Judge Sue Bell Cobb (of the Court of Criminal Appeals), sitting as an alternate for Judge William E. Robertson (of the Court of Civil Appeals), selected by this Court; Circuit Judges Carlton Mayhall, Jr., and Robert G. Kendall, selected by the Circuit Judges' Association; District Judge John J. Dobson, selected by the District Judges' Association; Nelson Vinson and William D. Scruggs (attorneys-at-law), selected by the governing body of the Alabama State Bar; James L. North, attorney-at-law, selected by then Lieutenant Governor Don Siegelman and confirmed by the Alabama Senate. The Governor had not appointed "two persons who are not lawyers." See § 6.18(a), Alabama Constitution (as amended by Amendment No. 581). All of the judges on the Court of the Judiciary, as it was composed for the trial of Judge Boggan's case, were constitutionally appointed, and those judges constituted more than "a majority of the members of the court." Rule 9, Rules of Procedure of the Alabama Court of the Judiciary, provides: "Hearings on the complaint shall be public before a majority of the members of the court. . . ." Only seven judges had been selected and appointed to that court, although § 6.18 of Amendment No. 581 provides for that court to have nine judges. Seven judges found Judge Boggan guilty as charged in Counts One, Two, Three, Five, and Six; and five judges (five would have been a majority even if there had been nine judges) voted to remove Judge Boggan as probate judge of Wilcox County.
Judge Boggan also complains in his reply brief that three lawyers were on the court that tried him. The two members selected by the Alabama State Bar must be "members of the state bar." The constitutional amendment provides: "The Court of the Judiciary is created consisting of [along with others] one person appointed *Page 553 
by the Lieutenant Governor." Nothing prohibited the Lieutenant Governor from appointing a person who is a "member of the state bar."
We find no merit to the issues raised in Judge Boggan's reply brief.
Judge Boggan's first argument in his principal brief is that the fact that his sentence was imposed at the time of the finding of guilt denied him the opportunity to offer evidence with regard to the severity of the sanction imposed upon him. This issue was not raised in the trial court and cannot be raised for the first time on appeal.
The Alabama Rules of Appellate Procedure "govern appeals to the Supreme Court." Rule 1, Ala.R.App.P. Rule 4(a)(3), Ala.R.App.P., provides: "Any error or ground of reversal or modification of a judgment or order which was asserted in thetrial court may be asserted on appeal. . . ." In Norman v. Bozeman,605 So.2d 1210, 1214 (Ala. 1992), this Court held: "Our review is limited to the issues that were before the trial court — an issue raised on appeal must have first been presented to and ruled on by the trial court." (Citation omitted.) See also the cases collected at 2 Ala. Digest 2d 183, Appeal Error, § 169.
In Hayes v. Alabama Court of the Judiciary, 437 So.2d 1276,1279 (Ala. 1983), this Court stated: "The Court of the Judiciary announces its judgment and sanction at the same time; therefore, it was entirely appropriate that previous disciplinary action be offered before the judgment was announced."
This Court and the Court of the Judiciary have long recognized that evidence in mitigation of sanctions may be introduced in the Court of the Judiciary. In re Samford,352 So.2d 1126, 1127-28 (Ala. 1977). In mitigation of the charge of mismanagement (Count Six), Judge Boggan introduced evidence indicating that many of the deficiencies in the Wilcox County Probate Office that had resulted in the charge of mismanagement in office had been corrected. Nothing in the record before us indicates that Judge Boggan was not permitted during his trial to introduce evidence in mitigation of sanctions. However, he contends that a trial in the Court of the Judiciary should be bifurcated, with the first part being concerned only with the question of guilt and the second being concerned with sanctions, in the event of a finding of guilt; and he contends that that court should operate with established standards for determining the sanctions. Judge Boggan cites Rule 12(e)(4) of the Alabama Rules of Disciplinary Procedure to show that this Court has provided such a procedure in proceedings against lawyers. Rule 12(e)(4) provides:
 "If the Disciplinary Board finds that the respondent has violated the Rules of Professional Conduct, the Disciplinary Board shall permit the General Counsel and the respondent to present matters in aggravation and mitigation, including any prior violations of the Rules of Professional Conduct by the respondent, or the absence of such violations, for consideration by the Disciplinary Board in determining the appropriate discipline. If the charges have been deemed admitted for failure to file an answer within the prescribed time, the respondent will be advised that the purpose of the hearing is to determine punishment and that the Disciplinary Board will consider only relevant matters in aggravation and mitigation of punishment."
Judge Boggan cites "Alabama Standards for Imposing Lawyer Discipline" (see Ala. Code 1975, vol. 23A, pp. 851-71 (1996 repl. vol.)), which became effective January 1, 1991, to show that this Court has imposed standards for disciplining attorneys although it has not provided such standards for disciplining judges.
Judge Boggan reminds us that in the field of criminal law, which he admits is decidedly different from the imposition of *Page 554 
sanctions in judicial discipline, this Court requires a sentence hearing in all felony cases unless such a hearing is waived by the parties, with the consent of the Court. Rule 26.6(b), Ala.R.Crim.P. Although the trial court has discretion in the range of criminal punishment it will impose, this Court has adopted these "Principles of Sentencing" (Rule 26.8, Ala.R.Crim.P.):
 "The sentence imposed in each case should call for the least restrictive sanction that is consistent with the protection of the public and the gravity of the crime. In determining the sentence, the court should evaluate the crime and its consequences, as well as the background and record of the defendant and give serious consideration to the goal of sentencing equality and the need to avoid unwarranted disparities."
(Emphasis added.)
Judge Boggan also directs the Court's attention to the procedures used in awarding punitive damages in civil cases. This Court and the United States Supreme Court have recognized the need for a judicial review and evaluation based on specified standards and an opportunity for a civil defendant to be heard after the jury's verdict, when punitive damages are awarded and the defendant contends that those damages are excessive. Hammond v.City of Gadsden, 493 So.2d 1374 (Ala. 1986); Green Oil Co. v.Hornsby, 539 So.2d 218 (Ala. 1989); BMW of North America, Inc. v.Gore, 517 U.S. 559 (1996), on remand to this Court, 701 So.2d 507
(Ala. 1997) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." 701 So.2d at 510, quoting 517 U.S. at 574).
Judge Boggan's argument is interesting, and it is novel in the area of judicial discipline. Alabama provides notice of what conduct is subject to sanctions and notice that sanctions can include censure, suspension, or removal from office. See Canons of Judicial Ethics and § 6.18 (Amendment 328), Constitution of Alabama of 1901. We are not aware that any State further defines judicial sanctions or offers further guidelines for imposing these sanctions. An appellate court judge, a circuit judge, a district judge, and two lawyers, sitting as judges of the Court of the Judiciary, found that Counts One and Two of the complaint were supported by clear and convincing evidence sufficient for the removal of Judge Boggan from office. Judge Boggan mentioned the Standards for Lawyer Discipline; although they are not applicable in this case, it is interesting to note that standards 5.11(b), 5.21, and 6.11 address conduct comparable to that alleged in Counts One and Two, and for each of these the "generally appropriate" sanction is disbarment. Judge Boggan had fair notice that evidence in mitigation could be offered before the court. See In re Samford, decided in 1977, and Hayes, decided in 1983. Judge Boggan has had all the process he is due under the Federal and State Constitutions.
Article VI of the Alabama Constitution (the Judicial Article, as adopted by Amendment 328), § 6.18 (as amended by Amendment No. 581), provides that the Court of the Judiciary "shall have authority, after notice and public hearing":
 "(1) to remove from office, suspend without pay, or censure a judge, or apply such other sanction as may [be][1]
prescribed by law, for violation of a Canon of Judicial Ethics, misconduct in office, failure to perform his or her duties, or (2) to suspend with or without pay, or to retire a judge who is physically or *Page 555 
mentally unable to perform his or her duties."
Section 6.18 further provides:
 "(b) A judge aggrieved by a decision of the Court of the Judiciary may appeal to the Supreme Court. The Supreme Court shall review the record of the proceedings on the law and the facts."
This Court has repeatedly held that when it reviews the record of the proceedings of the Court of the Judiciary on the law and the facts, if the record shows by clear and convincing evidence that the charge or charges have been committed then this Court does not have the authority to reduce or reject the sanction imposed by the Court of the Judiciary. Hayes v. Alabama Court ofthe Judiciary, 437 So.2d 1276, 1279 (Ala. 1983); Powers v.Judicial Inquiry Commission, 434 So.2d 745 (Ala. 1983); In reSamford, 352 So.2d 1126 (Ala. 1978). Judge Boggan argues that this line of cases should be appropriately modified or else a judge could be denied procedural due process and equal protection of the law. He does not contest the court's findings as to Count Three (cashing personal checks from probate-court funds, which checks were returned unpaid for nonsufficient funds); Count Five (failure to timely file his 1996 "Statement of Economic Interests" with the State Ethics Commission; that statement was due June 30, 1997,[2] but was not filed until October 29, 1998); and Count Six (mismanagement of the Wilcox County Probate Judge's Office from October 1, 1989, through September 30, 1996). The court held that each of these three violations, standing alone, would require a sanction of only censure or suspension. The court further held that the convictions on the more serious charges, Counts One and Two, required that Judge Boggan be removed from office. The court sat as the trier of fact in this case, heard all the witnesses, and had an opportunity to observe their demeanor and judge their credibility.
When a trial court — and the Court of the Judiciary was the trial court in this case — hears ore tenus testimony, its findings based upon that testimony are presumed correct and its judgment based on those findings will not be disturbed unless the appellate court, after considering all the evidence and all reasonable inferences that can be drawn therefrom, concludes that the judgment is plainly and palpably wrong, manifestly unjust, or without supporting evidence. Ex parte Caribe, U.S.A., Inc.,702 So.2d 1234 (Ala. 1997). In Powers v. Judicial InquiryCommission, 434 So.2d at 749, quoting Thomas v. Davis,410 So.2d 889, 891 (Ala. 1982), this Court specifically applied this well-settled standard of review: "In the absence of specific findings of fact by the trial court, this court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous and against the great weight and preponderance of the evidence." (Citations omitted.)
Because the court found Judge Boggan guilty of Counts One and Two, we must consider the evidence on these counts in the light most favorable to the Judicial Inquiry Commission, the prevailing party. First Health, Inc. v. Blanton, 585 So.2d 1331, 1332 (Ala. 1991); Barnes v. Barnhart, 420 So.2d 282, 284 (Ala.Civ.App. 1982); Dolvin v. State, 391 So.2d 133, 139 (Ala. 1980).
Judge Boggan was initially elected probate judge of Wilcox County in 1988, and he took office in 1989. He continued in that office, into a second term, until these charges were filed against him in the Court of the Judiciary on January 12, 1999, at which time he was suspended from office with pay, by operation of law. *Page 556 
During Judge Boggan's terms as probate judge of Wilcox County, three audits of his office were performed by the Department of Examiners of Public Accounts. Those audits were admitted into evidence as the Judicial Inquiry Commission's exhibits. These audits are at the center of most of the charges against Judge Boggan.
 Count One (The false deposit slip)
One of the audits conducted by the Department of Examiners of Public Accounts covered the period October 1, 1992, through September 30, 1995. The audit was conducted in 1996, and the audit report was filed on November 22, 1996. That audit contained a charge-back against Judge Boggan in the amount of $24,364.55, "due to deposit errors." The audit stated: "This amount was paid by the official at the conclusion of the examination." A subsequent audit, conducted by Douglas Coates of the Department of Examiners of Public Accounts, who had over 25 years' experience in the county audit division, revealed that the charge-back had not in fact been paid and that Judge Boggan had falsely represented that the payment had been made. In that audit, Coates made the following findings as to the payment of $23,000 of the charge-back:
 "The official is charged with the unsettled bank account shortage from the prior examination. The settlement of this shortage was misrepresented by the Judge of Probate at the conclusion of the prior examination. The $23,000.00 check for the settlement of the majority of the bank account shortage for the prior examination, was deposited on August 24, 1996, and was withdrawn on the same day by an unnumbered counter check. This August 24, 1996 deposit was presented to the Examiners on September 6, 1996 for settlement of the majority of the bank shortage for the examination period
 "The August 1996 bank statement was reported to be lost by [Judge Boggan] and was found several days later after repeated requests. After the bank statement was reviewed, and the $23,000.00 withdrawal found, [Judge Boggan] explained that he withdrew these funds after consultation with his attorney."
At trial, Coates said that in conducting an audit the examiner looks at the agency's records to see that the proper receipts are collected, are shown in bank books, and then are disbursed properly. The procedure includes reviewing bank records.
In conducting the initial review, Coates saw that the August 1996 bank records were missing and that the bank statement could not be located. He made a request for the missing records and proceeded to review the records that were available. When he finished with the records that were available, Coates went to Judge Boggan and told him that he needed the August 1996 bank statement. When Coates told Judge Boggan that, if it was necessary to secure a copy in this manner, a copy of the statement could be obtained from the bank, Judge Boggan looked some more and then produced a photocopy of the missing bank record.
When Coates received the photocopy of the missing bank record, he noticed a $23,000 deposit and a $23,000 withdrawal, with an unnumbered check, on the same day. This immediately caught his eye because usually the office used prenumbered checks and those numbers were shown on the bank statement. After Coates received the photocopy of the bank statement, Judge Boggan came to Coates and told Coates that he had made the $23,000 deposit, which represented the audit settlement, and had later in the same day withdrawn the same amount of funds on the advice of his lawyer.
Coates also heard a later conversation between Judge Boggan and Butch Smith, the audit manager of this audit. Judge Boggan told Smith the same thing, that he *Page 557 
had made a deposit of $23,000 into the probate account as part of the prior audit settlement, but then later in the day withdrew the funds. Later on the date of this second conversation, Judge Boggan produced the original bank records for August 1996.
Based on these facts, Coates determined that $23,000 of the prior audit charge-back had not been paid. Coates, therefore, made a charge-back against Judge Boggan for the $23,000, which represented the majority of the audit settlement for the preceding audit. That settlement should have occurred in 1996. It was finally paid in 1998, at the settlement of the audit for the period October 1, 1995, through September 30, 1996.
Charlotte Wilkerson, an employee of Camden National Bank, testified that she assisted Judge Boggan with both August 24, 1996, bank transactions. Wilkerson, at the time of the trial, had been employed by the bank for about six years. On August 24, Judge Boggan came to the window where Wilkerson was working as a teller. He brought with him two checks and two deposit slips. The first transaction involved a counter check made out to "Boggan Insurance." The number on the check indicating the account on which the check was drawn is the account number of the probate judge's office account. This check was deposited into the Boggan Insurance account. This was transaction number three for the day at Wilkerson's window. The second counter check Judge Boggan had with him was made out to the "Probate Office" account and was written on the Boggan Insurance account. It was deposited into the Probate Office account. This transaction was listed as transaction number four for the day. According to Wilkerson, Judge Boggan conducted both transactions during the same visit to her window. Judge Boggan had only $180.60 in the Boggan Insurance account at the time of these transactions.
On September 4, 1996, Judge Boggan presented the Probate-Office-account deposit slip, generated by these August 24, 1996, transactions, to the examiner to prove that he had settled $23,000 of the charge-back. On cross-examination, Judge Boggan admitted that when he presented the deposit slip to the examiner he knew that the amount had not been paid and that the deposit slip was a "worthless piece of paper" when he gave it to the examiner and represented that the matter had been settled.
 Count Two (False statements to investigators)
Investigator Bill Dickinson, of the attorney general's office, testified about statements made to him by Judge Boggan in the presence of Donnie McLeod, who was then Judge Boggan's attorney. Dickinson testified that he had conducted an investigation in late April or early May 1997 concerning Judge Boggan, based on a referral from the district attorney. Dickinson questioned Judge Boggan about the $23,000 purportedly paid in August 1996 in settlement of the audit.
Judge Boggan told Dickinson and Hart that when he learned money was missing from the Probate Office account he went to the bank in the morning and withdrew $23,000 from his personal account and put it in the Probate Office account. He told Dickinson that he gave the deposit slip from this transaction to the examiner. He said that he then talked to his attorney, who, he said, told him he should not pay the charge-back because to do so would make it look as if he had something to hide. Judge Boggan said that he then went back to the bank that afternoon and put the money back in his personal account.
During the interview and after Judge Boggan had made these representations, he was shown the sequential documents from the bank (the counter checks and the deposit slips from August 24, 1996). He denied that the transactions were sequential and said again that he had put the money in the Probate Office account in the *Page 558 
morning and then, on his attorney's advice, had removed the money that afternoon and put it in his personal account. He further stated that he "was going" to borrow money from attorney McLeod to cover the check.
We are persuaded by our review of the record of the proceedings on the law and the facts, and by the briefs filed by the parties, that the court had before it clear and convincing evidence indicating that Judge Boggan had committed the offenses charged in Counts One and Two. We will not in this case revisitHayes v. Alabama Court of the Judiciary, Powers v. JudicialInquiry Commission, or In re Samford, because we conclude that the sanction of removal from office for these serious offenses was not plainly and palpably wrong, manifestly unjust, or without supporting evidence.
AFFIRMED.
Maddox, See, Lyons, Brown, and England, JJ., concur.
Hooper, C.J., concurs specially.
Cook and Johnstone, JJ., dissent.
[1] We have read this provision as if it contains the word "be." The word does not appear in this provision of Amendment No. 581, and it did not appear in Act No. 95-647, Ala. Acts 1995, proposing the constitutional amendment. It did appear, however, in the original version of § 6.18. See Amendment 328.
[2] April 30 is the usual deadline for filing the Statement of Economic Interests with the State Ethics Commission; however, in 1997 the Ethics Commission extended the deadline for filing this form to June 30, 1997.