891 So.2d 848 (2004)
Roy S. MOORE
v.
JUDICIAL INQUIRY COMMISSION OF the STATE OF ALABAMA.
1030398.
Supreme Court of Alabama.
April 30, 2004.
*850 Andrew D. Dill, Foundation for Moral Law, Inc., Montgomery; and Phillip L. Jauregui, Birmingham, for appellant.
William H. Pryor, Jr., atty. gen.; Rosa H. Davis, chief asst. atty. gen.; and Charles B. Campbell and Melissa K. Atwood, asst. attys. gen., for appellee.
PER CURIAM.[1]

Facts
The material facts are not disputed. Roy S. Moore was elected to the office of Chief Justice of the Alabama Supreme Court in a statewide general election in November 2000. On January 15, 2001, Moore was sworn in as Alabama's 28th Chief Justice. Pursuant to the Judicial Article adopted in 1973 by constitutional Amendment No. 328 to the Alabama Constitution of 1901, Chief Justice Moore also became the administrative head of Alabama's Unified Judicial System ("The chief justice of the supreme court shall be the administrative head of the judicial system." Ala. Const.1901, Amend. No. 328, § 6.10).
After being elected Chief Justice, Moore designed and commissioned the construction of a granite monument that would, in Chief Justice Moore's words, "depict the moral foundation of law." Without notifying the eight Associate Justices of the Supreme Court, Chief Justice Moore installed the monument in the rotunda of the Judicial Building in Montgomery. The Judicial Building houses the Alabama Supreme Court, the Alabama Court of Criminal Appeals, the Alabama Court of Civil Appeals, the Alabama Administrative Office of Courts, and the State Law Library. The monument was installed during the night of July 31, 2001.[2]
*851 The monument was positioned in the rotunda of the Judicial Building so that it could be seen by every person entering the Judicial Building through the main entrance and by everyone who crossed the rotunda going to or from the State Law Library, the offices of the clerks of the intermediate appellate courts, and the public stairway, elevator, and restrooms. The monument was aptly described in the opinion of the federal district court in Glassroth v. Moore, 229 F.Supp.2d 1290, 1294-95 (M.D.Ala.2002):
"The monument is in the shape of a cube, approximately three feet wide by three feet deep by four feet tall. The top of the monument is carved as two tablets with rounded tops, the common depiction of the Ten Commandments; these tablets slope toward a person viewing the monument from the front. The tablets are engraved with the Ten Commandments as excerpted from the Book of Exodus in the King James Bible. Due to the slope of the monument's top and the religious appearance of the tablets, the tablets call to mind an open Bible resting on a lectern....
"Engraved on the left tablet is: `I am the Lord thy God'; `Thou shalt have no other Gods before me'; `Thou shalt not make unto thee any graven image'; `Thou shalt not take the name of the Lord thy God in vain'; and `Remember the sabbath day, to keep it holy.' Engraved on the right tablet is: `Honour thy father and thy mother'; `Thou shalt not kill'; `Thou shalt not commit adultery'; `Thou shalt not steal'; `Thou shalt not bear false witness'; and `Thou shalt not covet.' In addition, the four sides of the monument are engraved with fourteen quotations from various secular sources; these sources are identified on the monument to the extent that each quotation is accompanied by the name of a document or an individual. On each side of the monument, one of the quotations is larger than the others and is set apart in relief. The smaller quotations on each side are intended to relate to that larger quotation. The north (front) side of the monument has a large quotation from the Declaration of Independence, `Laws of nature and of nature's God,' and smaller quotations from George Mason, James Madison, and William Blackstone that speak of the relationship between nature's laws and God's laws. The large quotation on the west (right) side of the monument is the National Motto, `In God We Trust'; the smaller quotations on that side were excerpted from the Preamble to the Alabama Constitution and the fourth verse of the National Anthem. The south (back) side of the monument bears a large quotation from the Judiciary Act of 1789, `So help me God,' and smaller quotations from George Washington and John Jay speaking of oaths and justice. The east (left) side of the monument has a large quotation from the Pledge of Allegiance 1954, `One nation under God, indivisible, with liberty and justice for all,' and smaller quotations from the legislative history of the Pledge, James Wilson, and Thomas Jefferson suggesting that both liberty and morality are based on God's authority....
"... The court is impressed that the monument and its immediate surroundings are, in essence, a consecrated place, a religious sanctuary, within the walls of a courthouse."
*852 When he unveiled the monument, Chief Justice Moore delivered prepared remarks, copies of which were made available to those present at the unveiling. Chief Justice Moore stated that the monument depicted the moral foundation of the law and that it "serves to remind the appellate courts and judges of the circuit and district courts of this State and members of the bar who appear before them, as well as the people of Alabama who visit the Alabama Judicial Building, of the truth stated in the Preamble to the Alabama Constitution that in order to establish justice we must invoke `the favor and guidance of almighty God.'"

The Litigation
Shortly after the monument was installed, two actions were filed in the United States District Court for the Middle District of Alabama, seeking injunctions requiring Chief Justice Moore to remove the monument from the Judicial Building. These actions were consolidated for trial. Glassroth v. Moore, 229 F.Supp.2d at 1293. Following a trial that lasted several days, United States District Judge Myron Thompson issued an opinion on November 18, 2002, holding that by placing the monument in the rotunda of the Judicial Building, Chief Justice Moore had violated the Establishment Clause of the Constitution of the United States. Judge Thompson ordered Chief Justice Moore to remove the monument within 30 days of the date of his opinion. The district court did not issue an injunction at the time it issued its opinion, but it stated that if the monument was not removed within 30 days, it would enter an injunction requiring the monument's removal within 15 days of the entry of the injunction. Chief Justice Moore appealed Judge Thompson's ruling to the United States Court of Appeals for the Eleventh Circuit.
Chief Justice Moore refused to remove the monument within the 30 days allowed by the November 18 order, and the district court, on December 19, 2002, issued a permanent injunction requiring Chief Justice Moore to remove the monument within 15 days (i.e., by January 3, 2003). Glassroth v. Moore, 242 F.Supp.2d 1067 (M.D.Ala.2002). Chief Justice Moore petitioned the district court for a stay of the injunction pending the disposition of his appeal to the Eleventh Circuit Court of Appeals. The district court granted the stay. Glassroth v. Moore, 242 F.Supp.2d 1068 (M.D.Ala.2002). On July 1, 2003, the Court of Appeals for the Eleventh Circuit affirmed the judgment of the district court. Glassroth v. Moore, 335 F.3d 1282 (11th Cir.2003).
Chief Justice Moore did not seek a stay of the judgment of the Eleventh Circuit Court of Appeals and did not ask for a rehearing of that decision. On July 30, 2003, the court of appeals issued its mandate directing the district court to enforce its order to remove the monument. Pursuant to the mandate, the district court issued a mandatory injunction on August 5, 2003, requiring that the monument be removed no later than August 20, 2003. In response to this order, Chief Justice Moore issued a public statement on August 14, 2003, in which he said he had "no intention of removing the monument."
Chief Justice Moore did not appeal from the mandatory injunction; however, after the time for filing an appeal had expired, Chief Justice Moore asked the district court to stay the injunction pending the disposition of a petition for a writ of mandamus and prohibition he had filed in the United States Supreme Court.[3]
*853 On August 18, 2003, the district court denied the stay:
"The Chief Justice could have appealed, and still can appeal, the August 5 final judgment and injunction to the Eleventh Circuit Court of Appeals. 28 U.S.C. §§ 1291, 1291 (1994 & Supp.2003). The Chief Justice should not be able to circumvent, or avoid, the Eleventh Circuit and keep that appellate court out of the orderly appellate process.
"....
"... The Chief Justice argues that granting the writ will `aid [the United States Supreme] Court to conduct an orderly and timely review of [his] petition for writ of certiorari.'...
"This argument is completely meritless. Aside from the fact, as stated above, that the Chief Justice can simply seek relief in the Eleventh Circuit from this court's August 5 final judgment and injunction, this court, not once, but twice, invited the Chief Justice to invoke the orderly and established process under the federal rules for a stay of injunction pending a petition to the United States Supreme Court for a writ of certiorari  invitations which the Chief Justice declined."
On August 15, 2003, Chief Justice Moore filed with the Eleventh Circuit Court of Appeals a motion to recall the mandate and a motion to stay the injunction. That motion was denied on August 19. On August 20, 2003, Chief Justice Moore filed with the United States Supreme Court an application for recall and stay. The Supreme Court denied the application that same day.
When the monument was not removed by the August 20, 2003, deadline as ordered by the district court, some of the original plaintiffs filed a motion in the district court asking that court to hold Chief Justice Moore in contempt for refusing to obey the mandatory order of August 5. Before the district court ruled on the motion, the eight Associate Justices of the Alabama Supreme Court, exercising the power to overrule an administrative order of the Chief Justice given them by Ala.Code 1975, § 12-5-20, issued an order directing that the monument be removed. On August 21, 2003, the Alabama attorney general notified the district court that the action of the Associate Justices had rendered moot the motion to hold Chief Justice Moore in contempt. Removing the monument avoided the imposition of substantial daily fines against the State of Alabama, which the citizens of Alabama would have had to pay.
On the afternoon of August 21, 2003, Chief Justice Moore held a press conference at which he announced that he was "very disappointed with my colleagues who have decided to act in response to [the federal district court's] order [and] exercise authority under § 12-5-20, Alabama Code, to remove the monument of the Ten Commandments from the rotunda of the Alabama Judicial Building."
On August 22, 2003, the Judicial Inquiry Commission filed a formal complaint against Chief Justice Moore in the Court of the Judiciary charging Chief Justice Moore with violating Canons 1, 2 A, and 2 B of the Alabama Canons of Judicial Ethics.
On September 26, 2003, Chief Justice Moore filed a petition for a writ of certiorari with the United States Supreme Court, asking that Court to reverse the judgment of the Eleventh Circuit Court of Appeals. The United States Supreme *854 Court denied Chief Justice Moore's petition for the writ of certiorari on November 3, 2003.
Canons 1, 2 A, and 2 B of the Canons of Judicial Ethics, which Chief Justice Moore was charged with violating, read as follows:
"CANON 1

"A Judge Should Uphold the Integrity and Independence of the Judiciary

"An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
"CANON 2

"A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities

"A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
"B. A judge should at all times maintain the decorum and temperance befitting his office and should avoid conduct prejudicial to the administration of justice which brings the judicial office into disrepute."
Once a complaint is filed against a judge by the Judicial Inquiry Commission, the judge is automatically disqualified to act as a judge until the complaint is resolved in the Court of the Judiciary. Ala. Const.1901, Amend. No. 328, § 6.19. After the complaint against him was filed on August 22, Chief Justice Moore was no longer able to perform his duties as Chief Justice, pending resolution of the complaint in the Court of the Judiciary.
The Court of the Judiciary set October 3, 2003, as the deadline for Chief Justice Moore to file an answer to the complaint filed by the Judicial Inquiry Commission. Chief Justice Moore timely filed his answer, generally denying the allegations of the complaint and alleging that his refusal to obey the mandatory injunction issued by the federal district court was based upon his belief that the injunction was unlawful and illegal and that to obey it would require him to violate the oath of office by which he swore to uphold the Constitution of the State of Alabama.
After considering the evidence, most of which was not disputed, the Court of the Judiciary rendered its judgment and issued a unanimous opinion holding that Chief Justice Moore had violated the Canons of Judicial Ethics as charged in the complaint. The sanction imposed by the Court of the Judiciary was Chief Justice Moore's removal from office.
The Court of the Judiciary disposed of several pretrial motions filed by Chief Justice Moore.[4] This Court also considered *855 and denied several preliminary motions before reaching the merits of this appeal.[5] We turn now to the merits.

The Scope of Review
The Court of the Judiciary is a constitutionally created court with limited jurisdiction. Ala. Const.1901, Amend. No. 581, § 6.18 (proclaimed ratified June 19, 1996). It can decide only cases involving charges brought against judges by the Judicial Inquiry Commission. § 6.18(a). "A judge aggrieved by a decision of the Court of the Judiciary may appeal to the Supreme Court [of Alabama]. The Supreme Court shall review the record of the proceedings on the law and the facts." § 6.18(b).

Standard of Review
"The applicable standard of review for an order from the Court of the Judiciary is that the evidence must be clear and convincing. That is, `orders of the Court of the Judiciary are entitled to a presumption of correctness if the charge is supported by "clear and convincing evidence."'" In re Sheffield, 465 So.2d 350, 355 (Ala.1984) (quoting In re Samford, 352 So.2d 1126, 1129 (Ala.1977)). With regard to questions of law, this Court's review is de novo. Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala.1999)(quoting Ex parte Graham, 702 So.2d 1215 (Ala.1997)). However, factual findings of the Court of the Judiciary based on ore tenus evidence are presumed correct, and "[the Court of the Judiciary's] judgment based on those findings will not be disturbed unless the appellate court, after considering all the evidence and all reasonable inferences that can be drawn therefrom, concludes that the judgment is plainly and palpably wrong, manifestly unjust, or without supporting evidence." Boggan v. Judicial Inquiry Comm'n, 759 So.2d 550, 555 (Ala.1999). In the absence of specific factual findings, "this court will assume that the trial court [[6]] made those findings necessary to support its judgment, unless such findings would be clearly erroneous and against the great weight and preponderance of the evidence." 759 So.2d at 555 (quoting Powers v. Judicial Inquiry Comm'n, 434 So.2d 745, 749 (Ala.1983)). Further, in reviewing an appeal from a judgment of the Court of the Judiciary finding the judge guilty of the charges against him or her, the Supreme Court "must consider the evidence ... in the light most favorable to the Judicial Inquiry Commission, the prevailing party." Boggan, 759 So.2d at 555.
Our review is also guided by the Supremacy Clause of the United States Constitution: "This Constitution, and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const., art. VI, cl. 2.
Since the case of Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), was decided, it has been without doubt that the federal judiciary has the power and authority, among other things, to interpret the provisions of the United States Constitution in determining whether a provision, such as the Establishment Clause, has been violated.

*856 Issues On Appeal

I.
Chief Justice Moore contends initially that the Judicial Inquiry Commission failed to prove, and the Court of the Judiciary failed to consider, "the threshold question" of whether the order of the federal district court requiring the removal of the monument was "lawful." Chief Justice Moore himself points out that the charges against him are based on his willful failure "to comply with an existing and binding court order directed to him." Chief Justice Moore reasons, however, that if the order of the federal district court was not lawful, he "was ethically bound by his solemn oath to comply with the Constitutions of the United States and of Alabama, and not [with] the unlawful court order." Chief Justice Moore contends that the federal court order was unlawful and that the Court of the Judiciary set a "dangerous precedent" by holding that he was required to obey that order because, he argues, "the ethical duties of his office [of Chief Justice of the Alabama Supreme Court] require that he disobey unlawful orders."
The order of the federal district court provides, in part:
"The Establishment Clause of the First Amendment, made binding upon the States through the Fourteenth Amendment to the United States Constitution, provides that government `shall make no law respecting an establishment of religion.' The question presented to this court is whether the Chief Justice of the Alabama Supreme Court violated the Establishment Clause when he placed a slightly over two-and-a-half ton monument  engraved with the Ten Commandments and other references to God  in the Alabama State Judicial Building with the specific purpose and effect, as the court finds from the evidence, of acknowledging the Judeo Christian God as the moral foundation of our laws.... [T]his court holds that the evidence is overwhelming and the law is clear that the Chief Justice violated the Establishment Clause."
229 F.Supp.2d at 1293.
Chief Justice Moore contends 1) that as Chief Justice he "could not make a law," and 2) that the installation of the monument was not an establishment of religion. Therefore, Chief Justice Moore contends, the order of the federal district court was unlawfully predicated on a First Amendment analysis.
Chief Justice Moore also claims that the order of the federal district court is unlawful in that it violates the Tenth Amendment to the United States Constitution, which provides that "powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." The Preamble to the Alabama Constitution of 1901 provides: "We, the people of Alabama, in order to establish justice, ... invoking the favor and guidance of Almighty God, do ordain and establish the following Constitution...." Chief Justice Moore says that he installed the monument, consistent with this "constitutional[ly] divine acknowledgment," to recognize the God mentioned in the Preamble to the Alabama Constitution. He also says that power has not been delegated to the United States to deny the State of Alabama the right to do so. Chief Justice Moore argues that states have the inherent power to establish a system of justice, United States v. Morrison, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000); Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and that Alabama established its *857 system of justice "invoking the favor and guidance of Almighty God." Thus, according to Chief Justice Moore, the order of the federal district court directly and unlawfully interferes with a power expressly reserved to the State of Alabama. Based upon his reasoning that the federal court order was unlawful and that the Court of the Judiciary refused to consider the lawfulness of that order, Chief Justice Moore concludes that the Court of the Judiciary's holding that he violated the Canons of Judicial Ethics is not supported by clear and convincing evidence. We disagree.
Chief Justice Moore contends that the Court of the Judiciary "shirked its duty" by assuming that the federal district court's order was lawful and in failing to determine as an issue whether that order was unlawful. Chief Justice Moore supports this argument with a statement from the dissenting opinion in Butler v. Alabama Judicial Inquiry Commission, 802 So.2d 207, 221 (Ala.2001): "In a proceeding before the Alabama Court of the Judiciary, a defendant can raise and have decided a constitutional challenge to a judicial canon that the defendant is charged with violating." (Houston, J., dissenting). Chief Justice Moore, relying on that dissent, reasons that if the Court of the Judiciary can decide a constitutional challenge to a canon of judicial ethics, it can likewise decide a constitutional challenge to a court order that forms the basis for the charges against a judge before the Court of the Judiciary.
Chief Justice Moore also says that it was error for the Court of the Judiciary to refuse to consider his reasons for not complying with the order of the federal district court, and to consider only whether Chief Justice Moore had refused to comply and would continue to do so. Chief Justice Moore states that the judgment of the Court of the Judiciary has in effect created an "oath transfer rule"  that an oath taken by a public official is no longer to a constitution but to a court's opinion, even one contrary to the constitution.
The Judicial Inquiry Commission argues, however, that the Court of the Judiciary correctly refused to engage in a collateral review of the merits of the federal court order, because, it argues, the Court of the Judiciary lacks the jurisdiction or authority to engage in such a review. The Judicial Inquiry Commission says that it did not contend, and that the Court of the Judiciary did not hold, that the federal order was correctly decided. Rather, the Judicial Inquiry Commission says that it argued, and that the Court of the Judiciary held, that the correctness of a federal court's ruling is not reviewable by the Court of the Judiciary. We agree. Only a superior federal court can review the merits of a ruling by a federal court. Chief Justice Moore exercised his right to obtain such a review in the federal system, and the federal appellate courts consistently upheld the order of the federal district court.
"The Court of the Judiciary is a trial court whose jurisdiction is limited to the trial of complaints filed by the [Judicial Inquiry Commission] charging a judge or justice with violating one or more of the [Canons of Judicial Ethics]." Butler, 802 So.2d at 222 (Houston, J., dissenting). Further, the Court of the Judiciary does not have the authority to correct or control the judgments of federal courts, and the general rule is that state and federal courts will not interfere with "or try to restrain each other's proceedings." Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) (cited in Moody v. State ex rel. Payne, 295 Ala. 299, 329 So.2d 73 (1976)); Ex parte Consolidated Graphite Corp., 221 Ala. 394, 129 So. 262 (1930).
*858 We hold that there was before the Court of the Judiciary clear and convincing evidence that a federal injunction directed to Chief Justice Moore existed; that that injunction was a binding order of a court of competent jurisdiction; and that Chief Justice Moore intentionally and publicly defied the injunction.[7]

II.
Chief Justice Moore next argues that the Court of the Judiciary applied a constitutionally prohibited "religious test" in order to remove him from office for publicly acknowledging God through the installation of the monument. Chief Justice Moore notes that the Alabama Constitution, § 3, provides that "no religious test shall be required as a qualification to any office or public trust under this state." Chief Justice Moore says that the Judicial Inquiry Commission, in its argument before the Court of the Judiciary, characterized him as "totally unrepentant" for his refusal to cease his acknowledgment of God. According to Chief Justice Moore, he was forced to "deny God by removing the monument because a federal judge told him so."
Chief Justice Moore also contends that the judgment of the Court of the Judiciary runs afoul of the United States Constitution because, he argues, "[t]he Free Exercise Clause categorically prohibits government from regulating, prohibiting, or rewarding religious beliefs as such." McDaniel v. Paty, 435 U.S. 618, 626, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978). The result of the judgment of the Court of the Judiciary, Chief Justice Moore argues, is to prohibit him from holding both his religious belief and his public office, and he reasons that if that judgment is based on the Canons of Judicial Ethics, then the Canons constitute a religious test that bar people with religious beliefs from holding judicial office.
The Judicial Inquiry Commission argues, however, that the Court of the Judiciary did not impose a "religious test" upon Chief Justice Moore and that it did not order that he forsake the public acknowledgment of God or surrender his office. The Judicial Inquiry Commission maintains that neither it nor the Court of the Judiciary asked Chief Justice Moore to deny God or to forsake a public acknowledgment of God. In fact, the Court of the Judiciary, in its final judgment, expressly recognized that the acknowledgment of God "is very much a vital part of the public *859 and private fabric of our country." We agree.
The Judicial Inquiry Commission quotes Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940):
"The constitutional inhibition of legislation on the subject of religion has a double aspect. On the one hand, it forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship. Freedom of conscience and freedom to adhere to such religious organization or form of worship as the individual may choose cannot be restricted by law. On the other hand, it safeguards the free exercise of the chosen form of religion."
The Cantwell Court noted that the First Amendment "embraces two concepts,  freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." Id., at 303-04, 60 S.Ct. 900 (footnote omitted).
We cannot agree with Chief Justice Moore that the Court of the Judiciary applied an improper "religious test" in analyzing the issues before it, nor can we agree that its judgment violated Chief Justice Moore's constitutional rights to hold his religious beliefs.
We note that the actual statements made by the attorney general on behalf of the Judicial Inquiry Commission in closing argument before the Court of the Judiciary were as follows:
"Because Chief Justice Roy Moore, despite his special responsibility as the highest judicial officer of our state, placed himself above the law, by refusing to abide by a final injunction entered against him, and by urging the public through the news media to support him, and because he is totally unrepentant, this court regrettably must remove Chief Justice Roy Moore from the office of Chief Justice of Alabama. The rule of law upon which our freedom depends, whether a judge, a police officer, or a citizen, demands no less."
The Judicial Inquiry Commission did not contend, as Chief Justice Moore argues, that sanctions were sought because Chief Justice Moore is totally unrepentant "for his refusal to cease his acknowledgment of God." And the Court of the Judiciary's opinion refutes Chief Justice Moore's assertion that he was forced "to deny God by removing the monument because a federal judge told him so."
Two federal courts have concluded that this case is not about a public official's right to acknowledge God, as Chief Justice Moore contends. Rather, this case is about a public official who took an oath to uphold the Constitution of the United States and then refused to obey a valid order of a United States District Court holding that the placement of the monument in the Judicial Building violated the Establishment Clause of the First Amendment to the United States Constitution.
We quote with approval the following from the opinion of the United States Court of Appeals for the Eleventh Circuit, affirming the order of the federal district court:
"The clear implication of Chief Justice Moore's argument is that no government official who heads one of the three branches of any state or of the federal government, and takes an oath of office to defend the Constitution, as all of them do, is subject to the order of any court, at least not of any federal court below the Supreme Court. In the regime he champions, each high government official can decide whether the Constitution requires or permits a federal court order and can act accordingly. That, of *860 course, is the same position taken by those southern governors who attempted to defy federal court orders during an earlier era. See generally, e.g., Meredith v. Fair, 328 F.2d 586, 589-90 (5th Cir.1962)(en banc)...; Williams v. Wallace, 240 F.Supp. 100 (M.D.Ala.1965)... (Johnson, J.,) ...; cf. United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 ... (1964).
"Any notion of high government officials being above the law did not save those governors from having to obey federal court orders, and it will not save this chief justice from having to comply with the court order in this case. See U.S. Const. Art. III, § 1; id., Art. VI, cl. 2. What a different federal district court judge wrote forty years ago, in connection with the threat of another high state official to defy a federal court order, remains true today:
"`In the final analysis, the concept of law and order, the very essence of a republican form of government, embraces the notion that when the judicial process of a state or federal court, acting within the sphere of its competence, has been exhausted and has resulted in a final judgment, all persons affected thereby are obliged to obey it.'
"United States v. Wallace, 218 F.Supp. 290, 292 (N.D.Ala.1963)....
"The rule of law does require that every person obey judicial orders when all available means of appealing them has been exhausted.... The rule of law will prevail."
Glassroth v. Moore, at 335 F.3d 1302-03.

III.
Chief Justice Moore argues that the Court of the Judiciary denied his right to due process of law by refusing to hear his argument regarding the lawfulness of the order of the federal district court and by denying certain of the motions he filed with the Court of the Judiciary.
Citing Stallworth v. City of Evergreen, 680 So.2d 229 (Ala.1996), Chief Justice Moore contends that he had a property interest in the office of chief justice, that the Fourteenth Amendment prohibits states from depriving citizens of their property without due process of law, and that "`the opportunity to present reasons ... why [a] proposed action should not be taken is a fundamental due process requirement.'" 680 So.2d at 233 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). Chief Justice Moore says that "in its haste to remove [him] from office, the [Court of the Judiciary] `stopped up its ears' and ignored [his] argument that the underlying federal court order was unlawful and that such [an] order did not require his obedience as is consistent with his oath and conscience."
Chief Justice Moore also contends that the denial by the Court of the Judiciary of his "substantive motions" was a further violation of his due-process rights. The Court of the Judiciary denied filings that included 1) a motion to subpoena records that Justice Moore indicated would show that the members of the Court of the Judiciary were not appointed in conformity with Ala. Const.1901, Amend. No. 581, § 6.18; 2) a motion seeking the opportunity to serve interrogatories on, and conduct voir dire of, members of the Court of the Judiciary regarding their possible bias against Chief Justice Moore; 3) an inquiry into the term of office of one of the members of the Court of the Judiciary; 4) an inquiry into vacancies on the Court of the Judiciary; 5) a motion to allow "full and unrestricted media coverage" of Chief Justice Moore's hearing before the Court of the Judiciary; 6) a motion to disqualify *861 Attorney General Pryor; 7) a motion to dismiss the complaint against Chief Justice Moore; and 8) a motion for a judgment of acquittal and/or a judgment as a matter of law.
The Judicial Inquiry Commission maintains, however, that the Court of the Judiciary provided Chief Justice Moore with due process at every stage of these proceedings. The Judicial Inquiry Commission argues that because the Court of the Judiciary has no jurisdiction to review the merits of a federal court order, Chief Justice Moore was not deprived of due process of law by the refusal of the Court of the Judiciary to accept evidence and to hear arguments on the merits of the order of the federal district court. We agree. Chief Justice Moore was not deprived of due process by the rejection of the Court of the Judiciary of evidence on an issue over which that court has no jurisdiction.

IV.
Chief Justice Moore argues that "[t]he very same rules wielded by the [Court of the Judiciary] to punish [him] for refusing to deny God were themselves predicated upon the Holy Scriptures and moral precepts of Almighty God." Chief Justice Moore points out that Thomas Goode Jones, a lawyer and the governor of Alabama from 1890-1894, authored the first code of ethics for lawyers, which was adopted by the Alabama State Bar Association in 1887. Jones based his code of ethics substantially on the writings of George Sharswood and David Hoffman, early pioneers in the field of legal ethics. Sharswood and Hoffman relied heavily on scriptural teachings and moral principles as a basis for their work. Alva H. Maddox, Lawyers: The Aristocracy of Democracy or "Skunks, Snakes, and Sharks"?, 29 Cumb. L.Rev. 323 (1998-99).
The Judicial Inquiry Commission contends that the piety of those behind the drafting of Alabama's first code of legal ethics does not authorize Chief Justice Moore to willfully disobey a federal court order directed to him, nor does it excuse his disobedience. Chief Justice Moore cites no authority that provides an exception to the rule of law that one must obey a court order or that would allow disobedience to a court order on the basis of one's religious beliefs. Further, there is no such exception to the application of the Canons of Judicial Ethics to Chief Justice Moore's conduct.

Penalty of Removal From Office
The Judicial Inquiry Commission argues that this Court should not review the sanction imposed on Chief Justice Moore by the Court of the Judiciary because, it argues, there is clear and convincing evidence that Chief Justice Moore violated the Canons of Judicial Ethics, as charged, and once the Supreme Court determines that "the record shows by clear and convincing evidence that the charge or charges have been committed, then [the Supreme] Court does not have the authority to reduce or reject the sanction imposed by the [Court of the Judiciary]." Boggan, 759 So.2d at 555.
Chief Justice Moore, however, argues that, even if this Court finds that the Court of the Judiciary correctly held that he violated the Canons of Judicial Ethics, nothing in the Alabama Constitution of 1901 limits this Court's review of the sanction imposed by the Court of the Judiciary. Section 6.18(b), Amend. No. 581, Ala. Const.1901, provides that "[a] judge aggrieved by a decision of the Court of the Judiciary may appeal to the Supreme Court," and the Supreme Court "shall review the record of the proceedings on the law and the facts." Thus, argues Chief Justice Moore, if review of the sanction *862 imposed by the Court of the Judiciary is beyond the reach of the reviewing court, then "a judge aggrieved by a decision of the Court of the Judiciary" has only one-half of the remedy set out in § 6.18(b). Thus, argues Chief Justice Moore, this Court should not only review the sanction imposed by the Court of the Judiciary and reverse its order imposing the sanction, it should also overrule the holding in Boggan and "remove the hindrance" Boggan poses to appellate review of a judgment of the Court of the Judiciary.
As we held in Part I of this opinion, the Court of the Judiciary had before it clear and convincing evidence that Chief Justice Moore violated Canons 1, 2A, and 2B of the Canons of Judicial Ethics, as charged in the complaint filed by the Judicial Inquiry Commission, by willfully refusing to obey a lawful and binding order of a federal court. We decline to revisit Boggan and its predecessor holdings, as Chief Justice Moore suggests we do. We find it unnecessary to do so because we conclude, as did the Boggan Court, that the sanction of removal from office was not plainly and palpably wrong, manifestly unjust, or without supporting evidence. In fact, the evidence of Chief Justice Moore's violations of the Canons of Judicial Ethics was sufficiently strong and convincing that the Court of the Judiciary could hardly have done otherwise than to impose the penalty of removal from office. We find that the sanction imposed was proper and that it is supported by the evidence of record.

Conclusion
In addition to hearing oral arguments in this case, this Court has thoroughly reviewed the record on appeal and has carefully studied the briefs submitted by the parties. We conclude that the judgment of the Court of the Judiciary is fully supported by clear and convincing evidence, as is the sanction it imposed of removing Chief Justice Moore from office. The judgment of the Court of the Judiciary is hereby affirmed in its entirety.
AFFIRMED.
JOHN M. PATTERSON, Special Chief Justice, and JANIE L. SHORES, KENNETH F. INGRAM, BRAXTON KITTRELL, EDWARD DWIGHT FAY, JR., and J. RICHMOND PEARSON, Special Justices, concur.
HARRY J. WILTERS, JR., Special Justice, concurs specially.
HARRY J. WILTERS, JR., Special Justice (concurring specially).
I concur fully with the opinion of the Court. I write specially to add some personal observations.
The evidence received and considered by the Court of the Judiciary confirmed that Chief Justice Moore failed to obey an order of the federal district court. The Chief Justice never said whether, after he had exhausted all of his legal remedies, he would move the monument back into the rotunda of the Judicial Building.
Chief Justice Moore offered both legal and biblical arguments for his failure to comply with the federal court's order. Even if the biblical arguments could be considered, the Bible also tells us:
"Every person must submit to the supreme authorities. There is no authority but by act of God, and the existing authorities are instituted by him; consequently anyone who rebels against authority is resisting a divine institution, and those who so resist have themselves to thank for the punishment they will receive. For government, a terror to crime, has no terrors for good behavior. You wish to have no fear of the authorities? Then continue to do right and you will have their approval, for they are *863 God's agents working for your good. But if you are doing wrong, then you will have cause to fear them; it is not for nothing that they hold the power of the sword, for they are God's agents of punishment, for retribution on the offender. That is why you are obliged to submit. It is an obligation imposed not merely by fear of retribution but by conscience. That is also why you pay taxes. The authorities are in God's service and to these duties they devote their energies. Discharge your obligations to all men; pay tax and toll, reverence and respect, to those to whom they are due."[8]
"Submit yourselves to every human institution for the sake of the Lord."[9]
"In him everything in heaven and on earth was created, not only things visible but also the invisible orders of thrones, sovereignties, authorities, and powers."[10]
"Remind them to be submissive to the government and the authorities, to obey them, and to be ready for any honorable form of work; to slander no one, not to pick quarrels, to show forbearance and a gentle disposition towards all men."[11]
"He said to them, `Then pay Caesar what is due to Caesar, and pay to God what is due to God.'"[12]
"Do as the king commands you, and if you have to swear by God, do not be precipitate. Leave the king's presence and do not persist in a thing which displeases him; he does what he chooses. For the king's word carries authority. Who can question what he does? Whoever obeys a command will come to no harm. A wise man knows in his heart the right time and method for action. There is a time and a method for every enterprise."[13]
NOTES
[1] Amendment No. 581, Ala. Const.1901, § 6.18(b), which amends the Judicial Article, provides that "[a] judge aggrieved by a decision of the Court of the Judiciary may appeal to the supreme court." Following the filing of the notice of appeal in this case on December 10, 2003, the members of the Alabama Supreme Court acknowledged that Canon 3 of the Alabama Canons of Judicial Ethics required their recusal from consideration of this appeal. In a unanimous order dated December 11, 2003, the Court, pursuant to Amend. No. 328, §§ 6.10 and 6.21(h), and Ala.Code 1975, § 12-2-14, authorized the acting Chief Justice to "participate with the Governor in a random drawing" of 20 names from a pool of retired justices and judges who are members of the Alabama State Bar and capable of service. The order provided: "From the 20 judges so drawn, the first 7 judges shall constitute the special Supreme Court. In the event any judge so selected is not willing and able to serve, then that judge's place shall be filled by the next judge in order of selection.... The undersigned Justices, having provided a mechanism affording Roy S. Moore a right to be heard, hereby recuse."

On December 16, 2003, in compliance with the random selection procedure, Governor Bob Riley appointed the following seven judges to serve as the special Supreme Court of Alabama in case no. 1030398, Moore v. Judicial Inquiry Commission of the State of Alabama: The Honorable John M. Patterson, of Tallapoosa County, Special Chief Justice; the Honorable Janie L. Shores, of Jefferson County; the Honorable Kenneth F. Ingram, of Clay County; the Honorable Harry J. Wilters, Jr., of Baldwin County; the Honorable Braxton Kittrell, Mobile County; the Honorable Edward Dwight Fay, Jr., of Madison County; and the Honorable J. Richmond Pearson, Washington County, Special Associate Justices.
[2] The installation was videotaped, with Chief Justice Moore's permission, by Coral Ridge Ministries (an evangelical Christian media organization). Copies of the videotape have been sold to raise funds for the activities of Coral Ridge Ministries, which include the underwriting of expenses of Chief Justice Moore's legal defense.
[3] In that petition Chief Justice Moore asked the Supreme Court to direct the Eleventh Circuit Court of Appeals and the federal district court to refrain from enforcing any order requiring the removal of the monument, arguing that the relief he sought from the United States Supreme Court was not available in any other court.
[4] Including, among others, a motion to disqualify members of the Court of the Judiciary; a motion to move the hearing before the Court of the Judiciary to a larger facility; a motion to bar participation by or statements from lawyers who had represented Chief Justice Moore in other proceedings; and a motion to disqualify then Attorney General Pryor and representatives of his office (and a motion to reconsider the denial of that motion, supported by affidavits of former Governor Fob James, Jr., and his son, Forrest H. James III). The Court of the Judiciary considered every motion in turn, granting some and denying others.
[5] Including motions to disqualify acting Chief Justice Houston and the Associate Justices of the Alabama Supreme Court and to vacate the order appointing this special Supreme Court; motions to disqualify all members of this Court on the ground that the selection process was contrary to law; and motions seeking the recusal of certain members of this special Supreme Court.
[6] The Court of the Judiciary was the trial court in this case. See Boggan, 759 So.2d at 555.
[7] The following are comments made by Chief Justice Moore:

"I have no intention of removing the monument of the Ten Commandments and the moral foundation of our law. To do so would, in effect, result in the disestablishment of our system of justice in this State." Public statement issued by Chief Justice Moore on August 14, 2003.
"I did what I did because I upheld my oath. And that's what I did, so I have no apologies for it. I would do it again. I didn't say I would defy the court order. I said I wouldn't move the monument." Chief Justice Moore's statement to the Judicial Inquiry Commission on August 22, 2003.
"I did say I will not move the monument, that this I could not do. I did not say I would defy [the order of the federal district court]. I did not use those words; but I did say I would not move the monument." Testimony of Chief Justice Moore before the Court of the Judiciary on November 12, 2003.
"Q. [Attorney General Pryor]: Mr. Chief Justice, you stand by your testimony of August 22 of this year before the Judicial Inquiry Commission that you would do it again, don't you?
"A. [Chief Justice Moore]: I would do everything that I have done again, yes." Testimony of Chief Justice Moore before the Court of the Judiciary on November 12, 2003.
[8] Romans 13:1-7, The New English Bible.
[9] I Peter 2:13, The New English Bible.
[10] Colossians 1:16, The New English Bible.
[11] Titus 3:1-2, The New English Bible.
[12] Matthew 22:21, The New English Bible.
[13] Ecclesiastes 8:3-6, The New English Bible.